989 A.2d 210

Judith and Albert SCHUELE

v.

CASE HANDYMAN AND REMODELING SERVICES,
LLC and Case Design/Remodeling, Inc.

No. 7 Sept.Term, 2009.

Court of Appeals of Maryland.

Feb. 19, 2010.

556

558

Thomas J. Minton (Gold & Minton, P.C., Baltimore, MD), on brief for Petitioner.

Lee B. Rauch (Toyja E. Kelley of Tydings & Rosenberg, LLP, Baltimore, MD), on brief for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, Judge.

In this case, we are asked to decide whether under Maryland law a non-signatory to a contract may invoke equitable estoppel to enforce an arbitration provision contained within the contract. We are precluded from answering that question, however, because this case is before us on appeal from an order that is neither a final judgment nor an appealable interlocutory order. Accordingly, we shall vacate the judgment of the Court of Special Appeals and direct that the appeal be dismissed.

## I.

On November 21, 2006, Petitioners Judith and Albert Schuele entered into a home improvement contract with Shaun Arnold, a Baltimore County contractor and franchisee of Respondents Case Handyman Services, LLC and/or Case Design/Remodeling, Inc.[1] Although Respondents and Petitioners refer to Mr. Arnold's home improvement company as Professional Home Repair, Inc. ("PHR"), Mr. Arnold signed the contract as "Case Handyman Services" and accepted a $39,800 check payable to the order of "Case Handyman Services" as down payment on the contract.[2]

---

1. For the purposes of this appeal from the Circuit Court's denial of Respondents' pretrial "Motion to Dismiss and/or Compel Arbitration and Stay Proceedings," we will assume the accuracy of the facts alleged in the complaint.

2. PHR does not appear on any of the documents related to Petitioners' home remodeling contract with Mr. Arnold, but Mr. Arnold identifies

The contract consists of eight pages, sets forth a payment schedule, and describes the work Mr. Arnold was expected to complete. Printed on the back of each page of the contract is the "fine print," which is titled "General Conditions" and contains an arbitration clause. The arbitration clause provides:

> **2. CLAIMS**—Any controversy/claim arising out of or relating to this contract or its breach thereof, shall be settled by final and binding arbitration before a single arbitrator in the Baltimore metropolitan area in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

(Underlining in original).

Under the contract, Mr. Arnold agreed to perform "remodeling and/or repair work" on Petitioners' home in Towson, Maryland. After accepting Petitioners' down payment, however, Mr. Arnold performed no work on the contract except to draft written plans for the remodeling project, for which Petitioners paid an additional $2,700. During the next several months, Petitioners made several requests that Mr. Arnold set a work schedule and begin work, but in March 2007, Mr. Arnold told Petitioners that "he no longer had their funds" and would not begin work on the project. Mr. Arnold also told Petitioners that he was considering filing for bankruptcy. Petitioners alleged in their complaint that Mr. Arnold has since filed for personal bankruptcy, naming PHR as his home improvement company in the filings.

## The Lawsuit

On June 6, 2007, Petitioners filed a class action complaint against Respondents in the Circuit Court for Baltimore County. Petitioners alleged breach of contract (Counts I & II),

---

PHR as his home improvement company in his personal bankruptcy filings.

fraud by misappropriation (Counts III & IV), fraud or deceit (Count V), violations of the Maryland Consumer Protection Act (Count VI), and negligence (Count VII). In response, based on the arbitration clause in the contract between Petitioners and Mr. Arnold, Respondents filed a "Motion to Dismiss, or in the Alternative, to Compel Arbitration and Stay Proceedings" accompanied by a memorandum of law in support of the motion and a request for a hearing. In an order dated September 7, 2007, without a hearing, the Circuit Court granted Respondents' motion to compel arbitration without explanation, noting that Petitioners had filed no response. The record indicates, however, that Petitioners filed a response to Respondents' motion on August 31, 2007. On September 17, 2007, in an open court proceeding conducted without the parties' knowledge, the Circuit Court struck its order and denied Respondents' motion without written order. On September 24, 2007, Respondents filed a "Motion to Alter or Amend Judgment" and a request for a hearing. Petitioners filed their opposition to the motion to amend on October 11, 2007, and the Circuit Court denied Respondents' motion to amend and request for a hearing in an order dated October 18, 2007. On November 2, 2007, Respondents noted an appeal to the Court of Special Appeals.

■ The Court of Special Appeals held that the Circuit Court erred in denying Respondents' motion to compel arbitration. *Case Handyman & Remodeling Servs., LLC v. Schuele*, 183 Md.App. 44, 49, 959 A.2d 833, 836 (2008). The court first addressed whether either the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et. seq.*, or the Maryland Uniform Arbitration Act ("MUAA"), Md.Code (2006 Repl.Vol.), §§ 3–201 *et. seq. of the Courts and Judicial Proceedings Article* ("C.J."), governed the contract at issue. The court determined that, regardless of whether the FAA applied to the contract, the application of the MUAA "provides the same result." *Case Handyman*, 183 Md.App. at 54–56, 959 A.2d at 839–40. The court held that, because "the Schueles' allegations [arose] out of and directly relate[d] to their contract with PHR," Respondents, non-signatories to the contract, could

enforce the contract's arbitration clause against Petitioners based on principles of equitable estoppel frequently applied by federal courts in arbitration cases.[3] *Id.* at 57–58, 63, 959 A.2d at 841–42, 844–45.

Next, the Court of Special Appeals held that the arbitration clause was valid even though it did not fully comply with the Code of Maryland Regulations ("COMAR") 09.08.01.25, in part, because "COMAR 09.08.01.25 does not contain any penalty provisions or state that an arbitration clause is invalid if it fails to comply with the requirements of the regulation." [4] *Case Handyman,* 183 Md.App. at 68, 959 A.2d at 847. Moreover, the court noted that any instances of non-compliance

---

**3.** Grounded in the principle that "it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage," *Am. Bankers Ins. Group, Inc. v. Long,* 453 F.3d 623, 627 (4th Cir.2006), this theory of equitable estoppel allows non-signatories to a contract to enforce a contract's arbitration provision when the signatory's claims "must rely on the terms of the written agreement in asserting its claims against the non-signatory" and when the "signatory raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract," *MS Dealer Service Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir.1999) (internal quotation marks and citations omitted).

The Court of Special Appeals noted that in the arbitration context "equitable estoppel" is a misnomer because, unlike equitable estoppel in a contracts context, detrimental reliance is not required. *Case Handyman,* 183 Md.App. at 65–66, 959 A.2d at 846 (citing *Turtle Ridge Media Group, Inc. v. Pacific Bell Directory,* 140 Cal.App.4th 828, 835, 44 Cal.Rptr.3d 817, 822 (2006)).

**4.** COMAR 09.08.01.25, in relevant part, provides:

A. A mandatory arbitration clause in a home improvement contract shall include the following information:
(1) The name of the person or organization that will conduct the arbitration;
(2) Whether any mandatory fees will be charged to the parties for participation in the arbitration and include the fee schedule;
(3) Whether the arbitrator's findings are binding; and
(4) A disclosure that, under Business Regulation Article, § 8–405(c), Annotated Code of Maryland, a claim against the Home Improvement Guaranty Fund by an owner shall be stayed until completion of any mandatory arbitration proceeding.

were minor and the clause was sufficiently conspicuous to give Petitioners notice. *Id.* at 70, 959 A.2d at 848–49.

Petitioners filed a petition for *writ of certiorari* presenting three questions:

I. Did the Court of Special Appeals err in adopting federal law as controlling on the issue of whether equitable estoppel could be invoked by a non-party to a contract in order to enforce an arbitration provision, rather than applying state law to determine the provision's enforceability?

II. Did the Court of Special Appeals err in holding that Petitioners were equitably estopped from avoiding contractual arbitration with a non-party, where the non-party disavows any cognizable connection to the contract at issue, and where the agreement does not manifest any intent or agreement to arbitrate the legal or factual issues related to Respondents' own wrongdoing?

III. Did the Court of Special Appeals err in holding that a home improvement contract's arbitration provision may be judicially enforced even though the provision does not comply with the notice requirements imposed on such provisions under COMAR?

We shall not address these questions because the appeal of the Circuit Court's order denying Respondents' motion to compel arbitration did not constitute a final judgment and was not an appealable interlocutory order.[5]

---

B. The parties shall affix their initials and date immediately adjacent to any mandatory arbitration clause in a home improvement contract, at the time of execution of the contract.

5. We heard oral argument in this case on September 9, 2009. On November 10, 2009, we issued an opinion in *Addison v. Lochearn Nursing Home, LLC*, 411 Md. 251, 983 A.2d 138 (2009), which, like the present case, involved an appeal from the denial of a motion to compel arbitration. We dismissed the appeal as not taken from an appealable judgment.

We requested the parties to submit supplemental briefs to the Court to address whether *Addison* was dispositive of the jurisdictional issue presented by this case. This opinion reflects our consideration of the parties' arguments on that issue.

## II.

▮▮▮▮ In Maryland, appellate jurisdiction, except as constitutionally created, is statutorily granted. *Gruber v. Gruber,* 369 Md. 540, 546, 801 A.2d 1013, 1016 (2002); *Kant v. Montgomery County,* 365 Md. 269, 273, 778 A.2d 384, 386 (2001). "Where appellate jurisdiction is lacking, the appellate court will dismiss the appeal on its own motion." *Gruber,* 369 Md. at 546, 801 A.2d at 1016.

▮▮▮▮ Recently, we emphasized in *Addison v. Lochearn Nursing Home, LLC,* 411 Md. 251, 983 A.2d 138 (2009), that § 12–301 of the Courts and Judicial Proceedings Article of the Maryland Code authorizes appeals only from "a final judgment entered in a civil or criminal case by a circuit court." [6] 411 Md. at 261, 983 A.2d at 145 (internal quotation marks and citations omitted). Generally, to constitute a final judgment, a trial court's ruling "must either decide and conclude the rights of the parties involved or deny a party the means to prosecute or defend rights and interests in the subject matter of the proceeding." *Nnoli v. Nnoli,* 389 Md. 315, 324, 884 A.2d 1215, 1219–20 (2005). Moreover, to be a final judgment in a controversy involving multiple claims, the order must dispose of all claims in the action. *See* Md. Rule 2–602(a) ("[A]n order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action ... is not a final judgment."); *Addison,* 411 Md. at 271, 983 A.2d at 150; *Rohrbeck v. Rohrbeck,* 318 Md. 28, 41, 566 A.2d 767, 773 (1989) (noting that an order is not a final judgment if it does not

---

6. Subsequent statutory citations will be to the Courts and Judicial Proceedings Article of the Maryland Code (2006 Repl.Vol.).

 Section 12–301 provides:

 Except as provided in § 12–302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been suspended. In a civil case, a plaintiff who has accepted a remittitur may cross-appeal from the final judgment.

"adjudicate or complete the adjudication of all claims against all parties"). "An order that is not a final judgment is an interlocutory order and ordinarily is not appealable[.]" *Nnoli,* 389 Md. at 324, 884 A.2d at 1220.

■■■■ This case is before us on appeal from the Circuit Court's denial of Respondents' motion to compel arbitration. Because the Circuit Court's order did not adjudicate all claims in the action and was therefore not a final judgment as contemplated by § 12–301, we must treat this as an appeal from an interlocutory order. Interlocutory orders are immediately appealable only under three narrow exceptions to the final judgment rule. *Nnoli,* 389 Md. at 324, 884 A.2d at 1220. Those exceptions are: "appeals from interlocutory orders specifically allowed by statute; immediate appeals permitted under Maryland Rule 2–602; and appeals from interlocutory rulings allowed under the common law collateral order doctrine." *Addison,* 411 Md. at 274, 983 A.2d at 152 (internal quotation marks and citations omitted).

### Appealable Interlocutory Orders

■■■■ Section 12–303 expressly allows appeals from certain interlocutory orders.[7] The Circuit Court's order denying Re-

---

7. Section 12–303 provides:

A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

(1) An order entered with regard to the possession of property with which the action is concerned or with reference to the receipt or charging of the income, interest, or dividends therefrom, or the refusal to modify, dissolve, or discharge such an order;

(2) An order granting or denying a motion to quash a writ of attachment; and

(3) An order:

(i) Granting or dissolving an injunction, but if the appeal is from an order granting an injunction, only if the appellant has first filed his answer in the cause;

(ii) Refusing to dissolve an injunction, but only if the appellant has first filed his answer in the cause;

(iii) Refusing to grant an injunction; and the right of appeal is not prejudiced by the filing of an answer to the bill of complaint or petition for an injunction on behalf of any opposing party, nor by the taking of depositions in reference to the allegations of the bill of

spondents' motion to compel arbitration does not fall within any provision of § 12–303. *See Addison*, 411 Md. at 274–84, 983 A.2d at 153–58 (holding that § 12–303(3)(ix), which allows appeals from orders granting a petition to stay arbitration, does not permit appeals from interlocutory orders denying a motion to compel arbitration). Therefore, § 12–303 does not confer appellate jurisdiction over this matter.

### Final Judgment Certification

Under Rule 2–602(b), a trial judge may certify as a final judgment an order that adjudicates only some of the rights at issue, even though other claims between the parties remain unadjudicated.[8] *Maryland–Nat'l Capital Park &*

---

complaint to be read on the hearing of the application for an injunction;

(iv) Appointing a receiver but only if the appellant has first filed his answer in the cause;

(v) For the sale, conveyance, or delivery of real or personal property or the payment of money, or the refusal to rescind or discharge such an order, unless the delivery or payment is directed to be made to a receiver appointed by the court;

(vi) Determining a question of right between the parties and directing an account to be stated on the principle of such determination;

(vii) Requiring bond from a person to whom the distribution or delivery of property is directed, or withholding distribution or delivery and ordering the retention or accumulation of property by the fiduciary or its transfer to a trustee or receiver, or deferring the passage of the court's decree in an action under Title 10, Chapter 600 of the Maryland Rules;

(viii) Deciding any question in an insolvency proceeding brought under Title 15, Subtitle 1 of the Commercial Law Article;

(ix) Granting a petition to stay arbitration pursuant to § 3–208 of this article;

(x) Depriving a parent, grandparent, or natural guardian of the care and custody of his child, or changing the terms of such an order; and

(xi) Denying immunity asserted under § 5–525 or § 5–526 of this article.

8. Rule 2–602 provides:

(a) **Generally.** Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adju-

*Planning Comm'n v. Smith,* 333 Md. 3, 6–7, 633 A.2d 855, 857 (1993). The order certified, however, must be one that is itself "final in the traditional sense." *Planning Bd. of Howard County v. Mortimer,* 310 Md. 639, 651, 530 A.2d 1237, 1243 (1987) ("[A] prerequisite for the invocation of the certification procedure embodied in Rule 2–602(b) is an order which, absent the circumstance of multiple parties or multiple claims, would be final in the traditional sense."); *see also Med. Mut. Liab. Ins. Soc'y of Maryland v. B. Dixon Evander & Assoc.,* 331 Md. 301, 308, 628 A.2d 170, 173 (1993) ("[A] finding [of no just reason for delay] only makes a final order appealable. It cannot make a nonfinal order into a final order."). In other words, "Rule 2–602 does not operate to modify one of the statutory conditions for appellate jurisdiction—the existence of a final judgment." *Mortimer,* 310 Md. at 649, 530 A.2d at 1242.

 To be deemed final in the traditional sense, an order "must be completely dispositive of an entire claim or party." *B. Dixon Evander,* 331 Md. at 309, 628 A.2d at 174 (internal quotation marks and citations omitted); *see also Addison,* 411 Md. at 273 n. 14, 983 A.2d at 151 n. 14 (acknowledging that only orders adjudicating entire claims may be certified under Rule 2–602). Under Rule 2–602, a "claim," regardless of whether it is the original claim, a counterclaim, or a third-party claim, is defined as a "substantive cause of

---

dicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:
(1) is not a final judgment;
(2) does not terminate the action as to any of the claims or any of the parties; and
(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.
(b) **When allowed.** If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:
(1) as to one or more but fewer than all of the claims or parties; or
(2) pursuant to Rule 2–501(f)(3), for some but less than all of the amount requested in a claim seeking money relief only.

action," *Suitland Dev. Corp v. Merchs. Mtg. Co.*, 254 Md. 43, 54, 254 A.2d 359, 365 (1969), that encompasses all rights arising from common operative facts, *East v. Gilchrist*, 293 Md. 453, 459, 445 A.2d 343, 346 (1982).[9] Orders that dispose of less than an entire claim, such as only one among multiple legal theories or counts presented, cannot be certified. *Keene v. Levin*, 330 Md. 287, 292, 623 A.2d 662, 664 (1993); *East*, 293 Md. at 459, 445 A.2d at 346.

When a trial court has not exercised its discretion to certify an order as a final judgment, an appellate court, pursuant to Maryland Rule 8–602(e) may certify the order as a final judgment on its own initiative.[10] *Silbersack v. AC & S*, 402 Md. 673, 681, 938 A.2d 855, 859 (2008) ("[An] appellate court's authority under Rule 8–602(e)(1)(C) to enter judgment on its

---

**9.** In *Suitland*, this Court interpreted former Maryland Rule 605, which was the predecessor to Rule 2–602 and utilized nearly identical language. "The changes made by the adoption and subsequent amendment of Rule 2–602 are, for the most part, immaterial. Therefore, we shall ordinarily make no distinction between cases discussing one rule or the other." *Mortimer*, 310 Md. at 646 n. 4, 530 A.2d at 1241 n. 4.

**10.** Rule 8–602(e) provides:

(1) If the appellate court determines that the order from which the appeal is taken was not a final judgment when the notice of appeal was filed but that the lower court had discretion to direct the entry of a final judgment pursuant to Rule 2–602(b), the appellate court may, as it finds appropriate, (A) dismiss the appeal, (B) remand the case for the lower court to decide whether to direct the entry of a final judgment, (C) enter a final judgment on its own initiative or (D) if a final judgment was entered by the lower court after the notice of appeal was filed, treat the notice of appeal as if filed on the same day as, but after, the entry of the judgment.

(2) If, upon remand, the lower court decides not to direct entry of a final judgment pursuant to Rule 2–602(b), the lower court shall promptly notify the appellate court of its decision and the appellate court shall dismiss the appeal. If, upon remand, the lower court determines that there is no just reason for delay and directs the entry of a final judgment pursuant to Rule 2–602(b), the case shall be returned to the appellate court after entry of the judgment. The appellate court shall treat the notice of appeal as if filed on the date of entry of the judgment.

(3) If the appellate court enters a final judgment on its own initiative, it shall treat the notice of appeal as if filed on the date of the entry of the judgment and proceed with the appeal.

own initiative may be exercised only when the circuit court has never exercised its own discretion in the matter and not when the trial court was asked to enter judgment under Rule 2–602(b) and expressly declined to do so."); *see also Addison,* 411 Md. at 269, 272–73, 983 A.2d at 146, 150–51 (holding that an appellate court cannot certify an order denying a motion to compel arbitration when the trial court had denied a motion to certify the same order earlier in the litigation).

Rule 8–602(e), however, limits the certification authority of this Court and the Court of Special Appeals to only those orders for which "the lower court had discretion to direct the entry of a final judgment pursuant to Rule 2–602(b)." Rule 8–602(e)(1); *Osborn v. Bunge,* 338 Md. 396, 402, 658 A.2d 1102, 1105 (1995) ("This Court's power is limited to cases in which certification may be granted under Rule 2–602[.]"). The most frequently cited limitation on a trial court's discretion to direct the entry of a final judgment is that the court must expressly determine in a written order that there is no just reason for delay of the appeal. *Mortimer,* 310 Md. at 648, 530 A.2d at 1241–42 ("In the exceptional case, the trial judge may decide that early appellate decision of a particular point is of sufficient importance, or that delay will produce sufficient hardship or unfairness, to outweigh the general policy against piecemeal appeals.").

The Circuit Court in this case was not petitioned to certify its order denying Respondents' motion to compel arbitration; therefore, we need not address this condition to determine whether certification is appropriate. Instead, we must examine whether the Circuit Court's order denying Respondents' motion to compel arbitration is, as the law requires, "final in the traditional sense." *Mortimer,* 310 Md. at 651, 530 A.2d at 1243.

 The Circuit Court's order conclusively denied Respondents' "Motion to Dismiss, or in the Alternative, to Compel Arbitration and Stay Proceedings" and thus finally settled Respondents' sole claim. To be final in the traditional sense, however, an order must not only settle an entire claim but also

"be intended by the court as an unqualified, final disposition of the matter in controversy[.]" *Rohrbeck,* 318 Md. at 41, 566 A.2d at 773. It is well settled that to constitute an "unqualified final disposition" an order must be "so final as to determine and conclude the rights involved, or deny the appellant the means of further prosecuting or defending his rights and interests in the subject matter of the proceeding." *United States Fire Ins. Co. v. Schwartz,* 280 Md. 518, 521, 374 A.2d 896, 899 (1977), *overruled on other grounds by Litton Bionetics, Inc. v. Glen Constr. Co.,* 292 Md. 34, 437 A.2d 208 (1981); *see also Dep't of Pub. Safety v. LeVan,* 288 Md. 533, 542, 419 A.2d 1052, 1057 (1980) (citing *Schwartz,* 280 Md. 518, 374 A.2d 896).

From this principle, we have reasoned that "a trial court's order, terminating the action in that court and remanding the parties to another tribunal for resolution of their dispute, is final and appealable" even though the order does not resolve the underlying controversy. *Horsey v. Horsey,* 329 Md. 392, 404, 620 A.2d 305, 311 (1993). More specifically, in the context of arbitration, we have held that an order compelling arbitration of a controversy is immediately appealable as a final judgment even though "it does not finally dispose of all claims in the action in which it was filed" because the order "has the effect of putting the parties out of court." *Town of Chesapeake Beach v. Pessoa Constr. Co.,* 330 Md. 744, 750–53, 625 A.2d 1014, 1017–18 (1993) (quoting *Horsey,* 329 Md. at 401, 620 A.2d at 310) (internal quotation marks and citations omitted); *accord Addison,* 411 Md. at 272–73, 983 A.2d at 151. Conversely, "[w]e have held that a trial court's order denying a challenge to its jurisdiction is a nonappealable interlocutory order" because the order "does not settle or conclude the rights of any party or deny him the means of proceeding further." *Gruber,* 369 Md. at 547, 801 A.2d at 1017 (internal quotation marks and citations omitted); *Highfield Water Co. v. Washington County Sanitary Dist.,* 295 Md. 410, 416–17, 456 A.2d 371, 374–75 (1983) (holding that a trial court's determination that it had subject matter jurisdiction over a dispute was a nonappealable interlocutory order).

■ As we noted in *Addison*, an order denying a motion to compel arbitration does not put the parties out of court but, instead, effectively keeps the parties in court to litigate the claims remaining between them. 411 Md. at 273, 983 A.2d at 151. Moreover, like an order denying a jurisdictional challenge, an order denying a motion to compel arbitration asserts a court's jurisdiction over the controversy and leaves the parties free to resolve the underlying dispute in a judicial forum. *See Gruber*, 369 Md. at 547–48, 801 A.2d at 1017 ("Whenever a court makes a disposition or order, it does so on the basis that it has jurisdiction, and if its express announcement of that fact constituted an appealable order, it would be impossible for a court to proceed with the trial of any case in which its jurisdiction was challenged.") (internal quotation marks and citations omitted). For these reasons, an order denying a motion to compel arbitration is not final in the traditional sense. *See Addison*, 411 Md. at 273, 983 A.2d at 151. Consequently, we cannot certify as a final judgment, under Rule 8–602(e), the Circuit Court's order denying Respondents' motion to compel arbitration.

## The Collateral Order Doctrine

■ "This Court has made clear . . . that the collateral order doctrine in Maryland is very limited." *Walker v. State*, 392 Md. 1, 15, 895 A.2d 1024, 1033 (2006). The doctrine permits premature appeals from a limited class of cases in which the order appealed does not adjudicate all claims against all parties but "(1) conclusively determines the disputed question, (2) resolves an important issue, (3) resolves an issue that is completely separate from the merits of the action, *and* (4) would be effectively unreviewable if the appeal had to await the entry of a final judgment." *Id.*, 895 A.2d at 1033 (internal quotation marks and citations omitted); *accord Addison*, 411 Md. at 284–85, 983 A.2d at 158; *Dawkins v. Baltimore City Police Dept.*, 376 Md. 53, 58, 827 A.2d 115, 118 (2003). In *Addison*, we emphasized that this doctrine should be applied sparingly in only the most extraordinary circumstances. 411 Md. at 285, 983 A.2d at 158; *see also Washing-*

*ton Suburban Sanitary Comm'n v. Bowen,* 410 Md. 287, 296, 978 A.2d 678, 684 (2009) ("Time after time, this Court's opinions have emphasized that the collateral order doctrine is extremely narrow and that it is applicable only under extraordinary circumstances.").

Despite this Court's jealous application of the collateral order doctrine, Respondents argue that this appeal satisfies each of the doctrine's four requirements. In fact, Respondents assert that the only requirement not clearly established is that the order would be effectively unreviewable on appeal from a final judgment. Respondents argue that their motion is effectively unreviewable on appeal because their sole objective is to resolve this dispute through arbitration and "thereby avoid litigation in any other forum." Moreover, Respondents argue that requiring them to wait for a final judgment before appealing renders them powerless to defend their right to arbitrate the dispute because they will necessarily be forced to litigate the dispute in the interim.

Not surprisingly, Petitioners disagree. They contend that applying the collateral order doctrine to the order denying Respondents' petition to compel arbitration would "not only undermine the collateral order doctrine, but would render meaningless the result in *Addison v. Lochearn.*"

We agree with Respondents that the first three requirements of the doctrine are satisfied. First, the order conclusively determines whether Petitioners' claims should be resolved in arbitration by relegating the dispute to a judicial forum. *See Town of Chesapeake,* 330 Md. at 754–55, 625 A.2d at 1019–20 (addressing whether an order denying a stay of arbitration is reviewable under the collateral order doctrine). Second, the order necessarily resolves an important issue because it "determines the forum in which the claims will be settled." *See id.* at 755, 625 A.2d at 1020 ("If the parties are incorrectly forced into the wrong forum, the loss to each may be significant."). Third, the order settles a question completely separate from the merits of the action because it determines only the forum in which the parties should settle their dispute

without reaching any of Petitioners' claims against Respondents.

We are not persuaded, however, that this order would be effectively unreviewable on appeal. In *Addison,* we held that an order denying a motion to compel arbitration was not reviewable under the collateral order doctrine because the motion was not effectively unreviewable on appeal from a final judgment. 411 Md. at 285–87, 983 A.2d at 158–60. The party seeking appellate review in *Addison* attempted to bifurcate the action into two forums, arbitration of the counterclaims and litigation of the original claims, and thereby would have prolonged the litigation and increased the cost of the dispute. *Id.* at 287, 983 A.2d at 159. Respondents argue that *Addison* is distinguishable from this case because Respondents seek to remove the entire dispute to arbitration. Respondents further contrast *Addison* by pointing out that the aggrieved party in that case had filed the original claims in Circuit Court. *Id.,* 983 A.2d at 159. Petitioners argue that this distinction is insufficient to establish the extraordinary circumstances necessary to merit appellate review under the collateral order doctrine.

Generally, interlocutory orders denying a party's purported right to avoid a trial and the related "rigors of defending a lawsuit" are not reviewable under the collateral order doctrine. *See Bowen,* 410 Md. at 298–302, 978 A.2d at 685–87 (highlighting this Court's jurisprudence establishing the "principle that interlocutory orders denying immunity are not appealable"); *Nnoli,* 389 Md. at 329, 884 A.2d at 1223 ("The mere fact that an order denies a claim of a right to avoid participating in some aspects of the legal proceedings in the trial court does not mean the order presents an extraordinary situation satisfying the fourth prong of the collateral order doctrine."). " '[T]he idea that an issue is not effectively reviewable after the termination of the trial because it involves a 'right' to avoid the trial itself, should be limited to double jeopardy claims and a very few other extraordinary situations.' " *Dawkins,* 376 Md. at 61, 827 A.2d at 119 (quoting

*Bunting v. State,* 312 Md. 472, 481–82, 540 A.2d 805, 809 (1988)).

We have addressed in multiple cases the appealability of orders denying the so-called right to avoid trial. In *Nnoli,* we held that an order denying a defendant's motion to quash an arrest warrant did not present an extraordinary situation sufficient to satisfy the fourth prong of the collateral order doctrine. 389 Md. at 329, 884 A.2d at 1223. Moreover, we held in *Dawkins* that "interlocutory trial court orders rejecting defenses of common law sovereign immunity, governmental immunity, public official immunity, statutory immunity, or any other type of immunity, are not appealable under the Maryland collateral order doctrine." 376 Md. at 65, 827 A.2d at 122. Most recently, in *Addison,* we held that an order denying a motion to compel arbitration did not present a case that finally determined rights " 'too important to be denied review,' " and therefore we denied review under the fourth prong of the collateral order doctrine. 411 Md. at 287, 983 A.2d at 159 (quoting *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528, 1536 (1949)).

Unlike in *Addison,* the party seeking appellate review in this case did not institute the original action and is not seeking to bifurcate the action into two separate forums. This distinction, however, is not dispositive. We are not persuaded by Respondents' contention that this appeal is effectively unreviewable after a final judgment because the benefits of the arbitration agreement—an expeditious and more affordable resolution of the controversy in a non-judicial forum—will be permanently lost. Essentially, Respondents are arguing that they have a right to avoid trial and this right is sufficiently important to warrant immediate judicial review of the Circuit Court's order.

We effectively summarized in *Bunting* the pitfalls of allowing appeals based on a party's right to avoid trial:

Another difficulty with the defendant's argument is that numerous "rights" can readily be characterized as entitling

a party to avoid trial under some circumstances. For example, the "right" to summary judgment might be characterized as a right not to stand trial unless the opposing party has created a genuine issue of material fact. Similarly, the statute of limitations might be characterized as granting a defendant a right not to be tried out of time. If all "rights" which could be characterized in this manner were treated like the right against double jeopardy, the collateral order doctrine would largely erode the final judgment rule. Consequently, it is important that we narrowly construe the notion of an entitlement not to be sued or prosecuted.

312 Md. at 479–80, 540 A.2d at 808 (internal citations omitted).

A potential right to settle a controversy in a non-judicial forum presents circumstances no more extraordinary than a right to avoid a lawsuit entirely. *Id.* at 480–82, 540 A.2d at 808–09. A party's right to avoid trial is not reviewable under the collateral order doctrine except to enforce the constitutional protection against double jeopardy and in "very few other extraordinary situations." *Id.* at 481–82, 540 A.2d at 809.

Respondents' purported right to settle this controversy in a non-judicial forum presents circumstances much less extraordinary than a criminal defendant's right against being placed twice in jeopardy of life and limb for the same offense. The double jeopardy protection is singular because it guarantees that a criminal defendant shall not endure the ordeal of a second trial. *Parrott v. State,* 301 Md. 411, 425, 483 A.2d 68, 75 (1984). That right, once violated, cannot be restored by a reversal of the second conviction because the offense is not the second trial's outcome but the second trial itself. *Id.,* 483 A.2d at 75. A valid right to arbitrate a dispute, however, does not guarantee that a party will never have to endure judicial resolution of the controversy. An enforceable arbitration agreement promises only that the *final and controlling* decision in the relevant controversy will be obtained through arbitration. Unlike the protection against double jeopardy,

the right to arbitrate a dispute may be vindicated by vacating any intervening judicial decree and relegating the controversy to arbitration for final resolution. Therefore, the Circuit Court's order denying Respondents' motion to compel arbitration does not present sufficient extraordinary circumstances to render it appealable under the collateral order doctrine.

Respondents may challenge the order denying their motion to compel arbitration after a final judgment has been rendered on the merits of this case. *See Addison,* 411 Md. at 286, 983 A.2d at 159 (noting that the "assertion of error regarding the denial of the motion to compel would be reviewable on appeal"); *see also Bunting,* 312 Md. at 477–78, 540 A.2d at 807–08 (holding that a defendant's appeal from an order denying his challenge to the single transfer rule was reviewable on appeal from a final judgment of conviction). If an appellate court later determines that the controversy should have been arbitrated, then the case will be dismissed, the Circuit Court's judgment will be vacated, and Respondents will be free to resolve the controversy in arbitration. *See Bowen,* 410 Md. at 297, 978 A.2d at 685 (concluding that if the complaining party is "actually immune from suit under the circumstances, the judgment will be reversed on appeal and the trial court will be directed to dismiss the action. Consequently, in this respect, the fourth requirement of the collateral order doctrine is obviously not satisfied.").

### III.

In sum, an order denying a motion to compel arbitration is neither a final judgment nor an appealable interlocutory order. Accordingly, we vacate the judgment of the Court of Special Appeals and remand the case to that court with the direction to dismiss the appeal.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO DISMISS THE APPEAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENTS.**